USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 12/17/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------X

FRANCISCO LOZADA,                    :

                                     :     09 Civ. 8897 (DAB)(THK)

                                     :

              Petitioner,            :

                                     :     **REPORT AND RECOMMENDATION**

     -against-                       :

                                     :          (**Pro Se**)

                                     :

WARDEN ROBERT CRIPPS,                :

                                     :

              Respondent.            :

-------------------------------X

TO:  HON. DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE.
FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and © and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York.

Petitioner was convicted in New York Supreme Court, Sullivan County, of Burglary in the Third Degree (New York Penal Law § 140.20), and was sentenced to a term of imprisonment of two to six years.

Petitioner now seeks habeas relief pursuant to 28 U.S.C. § 2254, claiming that: (1) he was denied effective assistance of counsel when trial counsel failed to impeach the trial testimony of Officer Mark Hess and when trial counsel failed to properly conduct voir dire; and (2) he was denied the right to an impartial jury due

1

to the trial court's faulty supervision of voir dire.  Respondent
seeks dismissal of the Petition, arguing that it is time-barred.  In
addition, Respondent contends that Petitioner failed to exhaust his
claims and is therefore procedurally barred from raising them in
the instant Petition, and that, in any event, the Petition provides
no substantive basis for habeas relief.

For the reasons that follow, this Court concludes that
Petitioner is not entitled to habeas corpus relief and recommends
that the Petition be dismissed with prejudice.

### BACKGROUND

I.   Factual Background

On July 25, 2003, at approximately 5:00 a.m., Willis Curtis,
who lived in an apartment above the Pub Bar in Liberty, New York,
was awoken by a loud noise downstairs.  (See Trial Transcript,
dated Oct. 12, 2004 ("Tr."), at 128.)  Curtis subsequently heard
another noise coming from the bar, which was closed at the time for
renovations, at which point he called the police.  (See id.)  Linda
Kashan, one of the owners of the bar, testified that she had not
given anyone permission to enter the bar or to remove anything from
it.  (See id. at 127-30.)

Timothy Volger, a police officer with the Village of Liberty
Police Department, worked the 11:30 p.m. to 7:30 a.m. shift at the
time of the incident.  Volger routinely patrolled a part of town

2

where several bars were located, and testified that he was familiar with people who were often found in the area. (See id. at 133-34.) Volger stated that he had known Petitioner for seven to eight years prior to the incident and, that in the weeks prior to the incident, he had seen Petitioner wandering the streets several times a night. (See id. at 135, 138.) He also testified that he was familiar with Petitioner's brother. (See id.)

On July 24, 2003, the evening before the burglary occurred, Volger stated that he saw Petitioner and Michael Hiller walking in the area between 19 Chestnut Street and the Xtra Mart on Mill Street.[1]  (See id. at 140-41.) Volger was at the Liberty Police Department when Curtis called to complain of the noise coming from the Pub Bar during the early morning of July 25th. (See id. at 141.) Volger proceeded to the bar and found two people inside, both wearing hats and scarves over their faces. (See id. at 145-46.) Volger called his partner, Officer Mark Hess, to join him. Volger then shined his flashlight inside the bar, illuminating Petitioner's face. (See id.) Volger recognized Petitioner, as well as Hiller, who was standing beside Petitioner. (See id. at 153.) Volger stated that Petitioner was wearing a pair of baggy blue jeans, a white long-sleeve shirt, a scarf up to his

---

[1] Michael Hiller was Petitioner's co-defendant. He pleaded guilty and did not participate in the trial.

chin, and a yellow and green knit cap.  (See id. at 147.)  Both individuals appeared startled by the light and fled from the bar, followed closely by Volger, who pursued them by foot.  (See id. at 152.)  Volger testified that he was able to see Petitioner's entire face as Petitioner fled from the bar because the scarf was missing.  (See id. at 161.)

Hess responded to Volger's call for backup at around 5:00 a.m., and proceeded to the bar in his patrol car.  (See id. at 198-99.)  Hess testified that he too knew Petitioner prior to the incident.  (See id. at 195-96.)  Hess had previously provided aid to Petitioner following an injury sustained by Petitioner, and had offered him assistance over a period of more than one hour.  (See id.)  Hess also stated that, in the months prior to the incident, he often saw Petitioner on the streets of Liberty, sometimes with Hiller.  (See id. at 198.)  Hess testified that, prior to the incident, Petitioner had his hair in a slicked-back pony tail, while at the time of the burglary he had a buzz cut.  (See id. at 197.)

As Hess neared the bar, he saw two men run out of the front door of the building.  (See id. at 200.)  As they fled, the two suspects paused briefly on a street corner, at which time Hess exited his vehicle to chase the suspects on foot.  Hess testified that he was five feet away from Petitioner and that he recognized

4

him.  (See id.)  He further testified that Petitioner was wearing a yellow knit hat.  (See id. at 201.)  As Hess exited the patrol car, Petitioner turned and ran.  (See id. At 203.)

Hess, joined by Volger, resumed the chase.  The suspects ran into another building.  The officers followed them upstairs, but lost track of the suspects' location.  After hearing a noise, the two officers opened a stairwell door and found Hiller.  (See id. at 155.)  Though Petitioner was not present, the yellow and green cap he had been wearing was found in a dumpster located beneath the fire escape on which Hess and Volger had been standing.  (See id. at 156.)

Volger returned to the bar to investigate further.  Inside, he found two blue duffel bags: one containing bottles of liquor and the other empty except for a pair of socks.  (See id. at 157-59.) There was also a blue scarf next to the bags.  (See id. at 171-72.) Detective Robert Pablowski was called to preserve and collect evidence at the scene of the crime.  (See id. at 184.)  Along with the duffel bags and the blue scarf found inside the bar, Pablowski also found two white socks on Edgar Street, and was informed by the responding officers that the suspects threw these off their hands as they fled the scene.  (See id. at 186.)  He also secured a grey sock in the alleyway of 19 Chestnut Street, a yellow and green hat from a dumpster, a blue/gray scarf near the sock, and a gray, black

5

and white knit cap near the sock and scarf.  (See id. at 185-88.)

Petitioner's father testified on behalf of Petitioner.  He stated that in the summer of 2003, Petitioner lived with his mother in White Sulphur Springs, New York.  (See id. at 213.)  Petitioner moved in with his father in New Jersey during the last week of July 2003.  He also testified that Petitioner had long braided hair when he lived with him.  (See id. at 215.)  Miriam Lozada, Petitioner's mother, took a picture of her other son, Sebastian, two years prior to that time.  (See id. at 226.)  Officer Vogler testified on re-direct and identified the person in the picture as Sebastian Lozada.  (See id. at 231.)

On October 13, 2004, Petitioner was convicted of Burglary in the Third Degree.  On February 7, 2005, Petitioner was sentenced to a term of two to six years in prison.

II.  Procedural History

On January 3, 2005, prior to sentencing, Petitioner filed a motion with the Sullivan County Court, pursuant to N.Y. Crim. Proc. Law § 330.30, to set aside the verdict.  In the motion, Petitioner made various claims, including ineffective assistance of counsel with regard to jury selection, faulty cross-examination by counsel, inconsistencies in the testimonies of the police witnesses, conflict of interest of counsel, lack of independent DNA testing for evidence, and improper conduct by the trial judge.  (See

6

Affidavit in Support of Motion for New Trial, dated Jan. 3, 2005 ("§ 330.30 Aff."), attached as part of Ex. A to Pet.)  The motion was denied on January 31, 2005. (See Decision and Order, dated Jan. 31, 2005 ("§ 330.30 Dec."), attached as part of Ex. A to Pet.) Also, in January 2005, Petitioner filed a pro se writ of habeas corpus with the same court.  (See Petition for Habeas Corpus, ("State Pet."), attached as part of Ex. B to Pet.)  The habeas corpus petition was denied on February 15, 2005.  On February 17, 2005, after he had been sentenced, Petitioner filed a pro se motion to vacate and set aside his sentence, pursuant to N.Y. Crim. Proc. Law § 440.10.  Petitioner advanced substantially the same arguments in his § 440.10 motion as in his § 330.30 motion.  The § 440.10 motion was denied on April 29, 2005.  (See Decision and Order, dated April 29, 2005 ("§ 440.10 Decision"), attached as part of Ex. C to Pet.)

On April 27, 2005, Petitioner received permission from the Appellate Division, Third Department, to file a late Notice of Appeal.  Furthermore, on July 21, 2005, the Appellate Division granted Petitioner permission to appeal the denial of his § 440.10 motion, ordering that both appeals be heard together.  In his appellate brief, Petitioner, through a court appointed attorney, made the following claims: (1) the verdict was not supported by legally sufficient evidence; (2) the verdict was against the weight

7

of the evidence; (3) Petitioner was deprived of a fair trial due to specific testimony allowed at trial; and (4) the trial court improperly denied Petitioner a hearing on his § 440.10 motion, in which Petitioner had requested DNA testing.   (See Brief and Appendix for Appellant, ("Pet.'s App. Br.").)   On June 21, 2007, the Appellate Division affirmed Petitioner's conviction and the denial of his § 440.10 motion.   See People v. Lozada, 41 A.D.3d 1042, 839 N.Y.S.2d 275 (3d Dep't 2007).   The Appellate Division held that Petitioner did not adequately preserve his challenge to the sufficiency of the evidence, and that regardless, the evidence was not legally insufficient and the verdict was not against the weight of the evidence.   See id.   On September 10, 2007, the Court of Appeals denied Petitioner's application for leave to appeal. See People v. Lozada, 9 N.Y.3d 924, 844 N.Y.S.2d 178 (2007).

On March 16, 2009, Petitioner filed the instant Petition for a writ of habeas corpus.   Petitioner then filed an Amended Petition on December 23, 2009, and a Second Amended Petition on July 12, 2010.

DISCUSSION

I.   Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision

8

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. See Williams, 529 U.S. at 412, 120 S. Ct. at 1523; Leslie, 230 F.3d at 32.

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413, 120

S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but rather whether it was "objectively unreasonable." See id. at 408-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."); Lurie v. Wittner, 228 F.3d 113, 128-29 (2d Cir. 2000) (same).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility"), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091, 124 S. Ct. 962 (2003). A state court's findings of fact "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II.  Timeliness of the Petition

Respondent contends that the Petition, which was filed more than a year after Petitioner's judgment of conviction became final, is time-barred.  The Court agrees.

A.   The One-Year Limitations Period

Under AEDPA, there is a one-year statute of limitations governing habeas corpus petitions brought by state prisoners.  The statute of limitations ordinarily begins to run when a conviction becomes final.[2]  Where an appeal is sought with the New York Court of Appeals, a judgment becomes final 90 days from the date on which

---

[2] 28 U.S.C. § 2244(d) provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

leave to appeal is denied by the Court of Appeals, which is the amount of time a prisoner has to petition the United States Supreme Court for a writ of certiorari. See Clay v. United States, 537 U.S. 522, 525, 123 S. Ct. 1072, 1075 (2003).

In the instant case, the Court of Appeals denied Petitioner leave to appeal on September 10, 2007. The statute of limitations started to run on December 10, 2007, 90 days after leave to appeal was denied. Therefore, Petitioner had until December 10, 2008 to file his habeas corpus petition. Instead, the initial Petition was not filed until March 16, 2009. As a result, unless there is some basis to toll the statute of limitations, the Petition is time-barred.

Under 28 U.S.C. § 2244(d)(2), pendency of post-conviction filings by a petitioner may statutorily toll the one-year period. In the present case, however, it is clear that Petitioner's post-conviction filings, namely the § 440.10 motion, the § 330.30 motion, and the state writ of habeas corpus filed in state court, were all decided well before the statute of limitations began running on December 10, 2007. Petitioner's request for leave to appeal the Appellate Court's denial of the § 440.10 motion was denied on September 10, 2007; the § 330.30 motion was denied on January 31, 2005; and the writ of habeas corpus was denied on February 15, 2005. Therefore, these state court proceedings cannot

serve to toll the limitations period. Accordingly, Petitioner must show that he is entitled to equitable tolling in order to prevent the Petition from being time-barred.

B.    Equitable Tolling

Because  AEDPA's  one-year  limitations  period  is  not jurisdictional, it is subject to equitable tolling in "rare and exceptional circumstance[s]." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)(quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).  To qualify for equitable tolling, a petitioner must show that "(1) extraordinary circumstances prevented him from filing his petition on time," and that "(2) he acted with reasonable diligence throughout the period he seeks to toll." Id.; see also Holland v. Florida, 130 S. Ct. 2549, 2562-63 (2010); Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").  Petitioner fails to meet this standard.

Petitioner states that he was incarcerated from December 31, 2006 to October 3, 2008, due to a parole violation.   (See

Petitioner's Second Amended Petition for Writ of Habeas Corpus, filed July 12, 2010 ("Pet."), at 15.)   During this period, Petitioner claims that he did not receive notice — either from his attorney or the court — that the Appellate Division had decided his direct appeal on June 21, 2007.  He claims that it was only after he wrote to the Appellate Division, on March 13, 2008, to inquire about the status of his case, that he received a response from the court.  This response, dated March 19, 2008, informed Petitioner of the denial of both his direct appeal and his § 440.10 motion.  (See id. at 16.)  Petitioner states that after he received this letter, he attempted to prepare and file a Request for Leave to Appeal to the Court of Appeals, and that he filed such Request on November 5, 2008, after being released from prison on October 3, 2008.  (See id.)

Petitioner contends, however, that upon filing his Request for Leave to Appeal, he was informed by the Court of Appeals, by a letter dated November 10, 2008, that his appellate counsel had already filed a request on June 21, 2007, and that the application was denied by the court on September 10, 2007.   (See id.) Furthermore, he claims that his appellate attorney neither sent him a copy of the application requesting leave to appeal, nor did he inform him of such application.  (See id.)  Instead, Petitioner maintains that the November 10, 2008 correspondence was the first

14

time he had any knowledge of such application.  (See id.)

To support his claim, Petitioner has provided as exhibits to his Petition, copies of the correspondence discussed above.  The March 19, 2008 letter from the Appellate Division to Petitioner states that a copy of the decision had been sent to Petitioner's last known address after the decision was rendered on June 21, 2007, which was the Vernon C. Bain Center on Rikers Island.  (See id.)  Petitioner states that he was initially incarcerated in that facility, but was later moved to a different Rikers Island Correctional Facility, and so one of the two facilities was at fault for not having forwarded to him the copy of the Appellate Division decision.  (See id.)  Petitioner claims that the reason he did not inquire about his direct appeal until March 2008 was because he was under the impression that it was not unusual for the Appellate Division to take over a year to rule on an appeal.  (See id.)  Petitioner also contends that the inmate legal mail log books from the correctional facilities should prove that he never received a copy of the Appellate Division's decision from either the court or from his appellate attorney.  (See id.)  Petitioner further maintains that he did not receive the decision at his home address either.  (See id.)

Petitioner claims that prior to making the inquiry to the Appellate Division regarding his direct appeal, he attempted to

15

contact his appellate attorney several times but was unsuccessful.

(See id.)   However, he has not included any documentation to support this. Instead, Petitioner includes evidence of three attempts he made to contact his appellate attorney after November 10, 2008, which was when the Court of Appeals sent Petitioner notification that his request for leave to appeal had been filed and denied. Specifically, the dates of the letters Petitioner has included are November 28, 2008, January 31, 2009, and March 9, 2009. (See id., Ex. E.)

After Petitioner was notified that his request for leave to appeal to the Court of Appeals had been denied, he claims he was unsure of how to proceed in filing a writ of habeas corpus, as he did not know if it was possible to file the writ if he was no longer incarcerated but was instead on parole. (See id. at 17.) Finally, Petitioner maintains that once he became aware that he was eligible to file a writ of habeas corpus, he did so on March 16, 2009, which, according to him, was before one year had passed after being notified on March 19, 2008 that his direct appeal had been denied. Petitioner contends this is the correct date to start the limitations period because March 19, 2008 was when he became aware that his appeal had been denied, so this was when "the impediment to filing an application created by State action in violation of the Constitution or laws of the United States was cured." (See

16

id.)

The circumstances described by Petitioner do not entitle him to equitable tolling. First, Petitioner has provided no evidence of reasonable diligence in inquiring of his appellate attorney or the Appellate Division about the status of his direct appeal, in the period between April 2007, which was when the appeal was heard, to March 2008, which was when Petitioner wrote to the Appellate Division. While Petitioner claims he did not think it was unusual for the Appellate Division to take up to a year in deciding a case, this does not excuse the fact that Petitioner exercised no diligence during this time period. See Holland, 130 S. Ct. at 2565 (finding petitioner had shown reasonable diligence for the purposes of equitable tolling where he repeatedly wrote to his attorney and state courts). Furthermore, Petitioner's claim that he did not receive notice of the Appellate Division's denial of his appeal, because he had been transferred to another facility, does not excuse his lack of diligence. It was Petitioner's responsibility to apprise the court of his new address. See Spaulding v. Stewart, 13 Fed. Appx. 494, 496, 2001 WL 337853, *2 (9th Cir. 2001) (finding that equitable tolling was not justified where petitioner was transferred to another unit in a prison and claimed he did not receive a dismissal order. The Spaulding court held "it was incumbent upon [petitioner] to notify the state court of his new

address; there is no evidence in the record that [petitioner] informed the state court of the transfer."). In the present case, there is no evidence that Petitioner informed the Appellate Division or the Court of Appeals of his transfer to another Rikers Island facility.

In addition, even though Petitioner claims that he found out on March 19, 2008 that his direct appeal had been denied, he waited eight months, until November 2008, to file an application for leave to appeal. Under New York law, an application for leave to appeal must be filed within 30 days of service of an appellate division decision. See CPL § 460.10(5). There is also no evidence that Petitioner attempted to contact his appellate counsel between the time when he learned that his direct appeal had been denied and when he was notified of the denial of his attorney's application for leave to appeal to the New York Court of Appeals. Finally, even after being notified on November 12, 2008, that leave to appeal to the New York Court of Appeals had been denied on September 20, 2007, Petitioner delayed another four months in filing his habeas petition in this Court.

As discussed, the statute of limitations began running 90 days after the leave to appeal was denied by the Court of Appeals, on September 10, 2007. Thus, Petitioner had until December 10, 2008 to file his Petition. As a result, Petitioner still had

18

approximately one month from November 10, 2008, the time Petitioner

learned that the Court of Appeals had denied him leave to appeal,

to file at least a basic petition, which he could have amended

later on.  See Plowden v. Romine, 78 F. Supp. 2d 115, 119-120

(E.D.N.Y. 1999) ("the limitations period had not run at the time

[petitioner] claims he found out about the Court of Appeals's

decision; he still had a window (albeit a brief one of two weeks)

in which to file his habeas petition or file for state collateral

review"); Ferguson v. Mantello, No. 00 Civ. 2098 (SAS), 2000 WL

1721140, at *2 (S.D.N.Y. Nov. 16, 2000) (equitable tolling was

unwarranted where petitioner claimed he did not learn until twenty

six days before the end of the limitation period that his

application to appeal had been denied; this was enough time for the

petitioner to file a "bare bones" petition which he could have

attempted to later amend).   Instead, Petitioner waited

approximately four months after learning that leave to appeal had

been denied, and more than three months after the statute of

limitations expired, before filing the Petition. Petitioner claims

he was unsure if he was eligible to submit a petition for a writ of

habeas corpus because he was not incarcerated at the time.

However, ignorance of the law is not a legitimate basis on which to

toll the statute of limitations. See Zorilla v. Artuz, No. 99 Civ.

9249 (NRB), 2000 WL 328881 at *1 (S.D.N.Y. Mar. 29, 2000) (pro se

petitioner's lack of familiarity with law governing habeas cases did not justify equitable tolling).

Thus, even accepting Petitioner's claim that neither the state courts nor his attorney notified him of the various state court filings and decisions, when he did learn that various state court decisions had been rendered, he failed to act diligently.  Had he done so, he could still have filed the Petition on time.  Therefore, because Petitioner is not entitled to equitable tolling, the Petition is time-barred and should be dismissed.

III. <u>Failure to Exhaust</u>

Petitioner's claims must also be dismissed because he failed to exhaust them in the New York courts.

A.   <u>Ineffective Assistance Claims</u>

Petitioner claims in this proceeding that he was denied effective assistance of counsel on two grounds: (1) trial counsel's failure to impeach the trial testimony of Officer Mark Hess, and (2) trial counsel's failure to properly conduct voir dire.

Petitioner contends that Timothy Havas, the attorney assigned to represent him at trial, did not properly question Officer Hess on what Petitioner alleges were inconsistencies between Hess's testimony at trial and Hess's handwritten notes from the day of the crime.  (<u>See</u> Petition at 10-12)  According to Petitioner, the alleged inconsistencies are irreconcilable and his trial counsel

20

had no justifiable reason for not questioning Hess about the inconsistencies, thus leading to a violation of Petitioner's Sixth Amendment right to effective assistance of counsel. (See id.) Petitioner further contends that trial counsel provided ineffective assistance with regard to the jury selection process. Petitioner claims that trial counsel failed to properly question the jurors during voir dire and did not seek to prevent the selection of unbiased jurors.

It is well-settled that all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. See 28 U.S.C. § 2254(b)(1)(A); Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003). "At the core of the exhaustion doctrine . . . is the 'respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc)). Although both federal and state courts are charged with protecting a state criminal defendant's federal constitutional rights, the state courts must first be given an opportunity to consider and correct any violations of federal law. See id.

Where state law affords a petitioner the right to raise a

constitutional claim "by any available procedure," if the claim is not raised, it cannot be deemed exhausted.  28 U.S.C. § 2254©.  To satisfy the exhaustion requirement of 28 U.S.C. § 2254, "it is not sufficient merely that the [petitioner] has been through the state courts." Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct.  509, 512 (1971).  Rather, the claims must be fairly presented to the state courts so that the state has an opportunity to correct any alleged constitutional violations.  To "fairly present" a claim, the petitioner must raise "all of the essential factual allegations" and "essentially the same legal doctrine" asserted in the federal habeas petition.  Strogov v. Attorney Gen., 191 F.3d 188, 191 (2d Cir. 1999) (quoting Daye, 696 F.2d at 191-92).  "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002) (quoting Daye, 696 F.2d at 192); see also Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887, 888 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the [petitioner is] asserting claims under the United States Constitution.").

In the present case, Petitioner's ineffective assistance of counsel claims are unexhausted.  While Petitioner contends that he

included the claims in his initial § 330.30 and § 440.10 motions, the record is clear that Petitioner did not present these claims to the Appellate Division in his direct appeal of his conviction or the appeal of the § 440.10 decision.   Instead, in the combined proceeding, Petitioner raised only the following claims: (1) the verdict was not supported by legally sufficient evidence; (2) the verdict was against the weight of the evidence; (3) Petitioner was deprived of a fair trial due to specific statements made against Petitioner; and (4) the trial court improperly denied Petitioner a hearing on his § 440.10 motion, where Petitioner had requested DNA testing.   (See Pet.'s App. Br.)   Petitioner's brief to the Appellate Division makes no mention of an ineffective assistance of counsel claim.   (See id.)   As a consequence, the claims were also not raised in the application for leave to appeal to the Court of Appeals.[3]

Moreover, the claims are procedurally barred, since they could have been, but were not, raised on direct appeal, and no further direct appeal is permitted in New York.   See N.Y. Crim. Proc. Law

---

[3]Petitioner concedes that there is no reason why he could not have ensured that his appellate attorney included the claims in the direct appeal: "I don't know why . . . I did not tell him that the appeal he was placing on my behalf was unacceptable. I am part to blame as I imagine I could have stopped the proceedings somehow."  (Petitioner's Traverse Brief, filed on July 29, 2010 ("Pet's Trav."), at 5.)

§ 450.10(1); N.Y. Court R. § 500.10(a); <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001); <u>Ramirez v. Att'y General of the State of New York</u>, 280 F.3d 87, 89 (2d Cir. 2001).  Petitioner also cannot seek collateral review via a second § 440.10 motion, because the factual basis for the claims is record-based and was clearly available to him at the time he lodged his direct appeal.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)<sup>©</sup>; <u>Sweet v. Bennett</u>, 353 F.3d 135, 141 (2d Cir. 2003); <u>Aparicio</u>, 269 F.3d at 90-91.  Petitioner can therefore no longer obtain relief in the New York courts.  Accordingly, these claims are deemed exhausted but procedurally barred.

Because these claims have been defaulted pursuant to an independent and adequate state procedural rule, this Court is barred from considering the claims.  A petitioner may only obtain habeas review of a procedurally barred claim if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); <u>accord</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); <u>Clark v. Perez</u>, 510 F.3d 382, 393 (2d Cir. 2008); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005).

"[T]he cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's

24

efforts' to raise the claim in state court." McClesky v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986)); accord Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1043 (1989). Once a petitioner shows cause, the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the constitutional violation that is the subject of the defaulted claim, the outcome of the relevant proceeding would have been different. See Strickler v. Greene, 527 U.S. 263, 289, 119 S. Ct. 1936, 1952 (1999); McClesky, 499 U.S. at 494, 111 S. Ct. at 1471.

Alternatively, if a petitioner cannot show cause and resulting prejudice, the petitioner may still overcome a procedural bar by demonstrating a fundamental miscarriage of justice. This occurs where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496, 106 S. Ct. at 2649; accord Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994). The Supreme Court has explained that this exception should "remain rare" and should be applied only in "extraordinary case[s]." Schlup v. Delo, 513 U.S. 298, 321, 115 S. Ct. 851, 864 (1995) (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611

(1998).   "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (internal quotation marks omitted) (citing Schlup, 513 U.S. at 327-28, 115 S. Ct. at 867-68).   A petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324, 115 S. Ct. at 865; accord Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004).

Petitioner asserts, presumably as a cause, that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal.  However, in order to rely on ineffective assistance of appellate counsel as cause for a procedural default, the ineffective assistance claim itself must be both exhausted and meritorious.  See Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1592 (2000)(holding that ineffective assistance of counsel claims asserted as cause for procedural default must be exhausted for the purposes of habeas review); Cephas v. Ercole, No. 07 Civ. 6048 (NRB), 2008 WL 1944837, at *4 n.4 (S.D.N.Y. Apr. 29, 2008) ("[I]n

26

order to constitute cause, an ineffective assistance claim itself must be exhausted.") (citing <u>Edwards</u>, 529 U.S. at 451-52, 120 S. Ct. at 1591-92).

Petitioner never claimed in the state courts that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal. Because Petitioner did not exhaust his ineffective assistance of appellate counsel claim, it cannot serve as cause for the failure to raise the ineffective assistance of trial counsel claims on direct appeal. As Petitioner "has failed to show cause, there is no need to address the prejudice requirement." <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 127 (2d Cir. 1995).

Additionally, Petitioner cannot satisfy the miscarriage of justice standard, because he does not offer any new evidence of innocence. Without offering new evidence of his innocence, this Court cannot find that a miscarriage of justice occurred without "asserting that none of the jurors acted reasonably." <u>Lucidore v. N.Y. State Div. of Parole</u>, No. 99 Civ. 2936 (AJP), 1999 WL 566362, at *8 (S.D.N.Y. Aug. 3, 1999), <u>aff'd</u>, 209 F.3d 107 (2d Cir. 2000); <u>see also</u> <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) ("[Petitioner] presented no new evidence of his innocence and did not make the necessary showing required . . . to bypass the procedural bars.").

Because Petitioner's ineffective assistance of counsel claims are procedurally barred from further state review, and Petitioner has failed to demonstrate cause for his default, or a miscarriage of justice, the claims should be dismissed.

B.   Right to an Impartial Jury

Petitioner next contends that the trial court violated his due process rights by not conducting a more specific inquiry during voir dire concerning the prejudice or biases of the jurors, thus denying Petitioner his right to an impartial jury.

As with Petitioner's previous claims, this claim is unexhausted because Petitioner failed to present it to the Appellate Division on direct appeal of his conviction or on appeal of his § 440.10 motion, (see Pet.'s App. Br.), and did not raise it in his leave application to the Court of Appeals.   (See id.) Moreover, the claim is procedurally barred, since it could have been, but was not, raised on direct appeal, and no further direct appeal is permitted in New York.   See N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a); Aparicio, 269 F.3d at 90; Ramirez, 280 F.3d at 89.   Accordingly, Petitioner's jury claim is deemed exhausted but procedurally barred.

As with Petitioner's ineffective assistance of counsel claims, because the lack of an impartial jury claim is unexhausted and defaulted, this Court is barred from considering the claim unless

28

Petitioner can show cause and actual prejudice, or in the alternative, that failure to consider the claim will result in a miscarriage of justice.

Again, Petitioner indirectly asserts, presumably as a cause, that his appellate counsel was ineffective for failing to raise the jury claim on direct appeal. However, as previously noted, Petitioner did not raise and exhaust an ineffective assistance of appellate counsel claim in the state courts. Thus, such a claim cannot be cause for the purpose of overcoming a procedural bar. Since no cause has been shown, there is no need to consider the prejudice requirement.

Additionally, Petitioner cannot satisfy the miscarriage of justice standard, because, as discussed, he does he not offer any substantial new evidence of innocence. Because Petitioner's jury claim is procedurally barred from further state review, and Petitioner has failed to demonstrate cause and prejudice for his default, or a miscarriage of justice, the claim should be dismissed.

### CONCLUSION

Because the Petition is time-barred and the claims are unexhausted and procedurally barred, this Court respectfully recommends that the Petition be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of a denial

29

of a federal right, this Court recommends that no certificate of appealability be issued.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).  The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)[©] and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this report to file written objections.  See also Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully Submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: December 17, 2010
       New York, New York


Copies mailed to:


Francisco Lozada
915A Elder Avenue
Bronx, New York 10473

Bonnie M. Mitzner
Assistant District Attorney
Sullivan County
County Courthouse
Monticello, New York 12701

31